**AT & T MANAGEMENT PENSION PLAN, an employee pension benefit plan; and AT & T CORP., a New York corporation; Plaintiffs,**

v.

**Sandra TUCKER, an individual, Morris Tucker, an individual, and Does 1 through 10, inclusive, Defendants.**

No. CV 95–2263 ABC.

United States District Court, C.D. California.

Aug. 14, 1995.

Seyfarth, Shaw, Fairweather & Geraldson, Mitchel D. Whitehead, Steven B. Katz, Los Angeles, CA, for plaintiffs.

William Rehwald, Lawrence Matthew Glasner, Rehwald, Rameson, Lewis & Glasner, Woodland Hills, CA, for defendants.

ORDER RE:

1. Defendants' Motion to Dismiss Pursuant to FRCP 12(b)(6); and

2. Plaintiffs' Motion for Summary Judgment

COLLINS, District Judge.

Defendants' Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6), and Plaintiffs' Motion for Summary Judgment came on regularly for hearing before this Court on August 14, 1995. After reviewing the materials submitted by the parties, argument of counsel, and the case file, it is hereby ORDERED that Defendants' Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) is DENIED, and Plaintiffs' Motion for Summary Judgment is GRANTED. It is ORDERED FURTHER that Defendants' request for sanctions is DENIED.

**I. Background**

Except as indicated, the following facts are undisputed. Plaintiff AT & T MANAGEMENT PENSION PLAN ("the Plan") is an employee pension benefit plan existing pursuant and subject to the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended. Plaintiff AT & T CORPORATION ("AT & T"), a New York corporation, is a sponsor of the Plan, the Plan administrator, and a fiduciary of the Plan, as those terms are defined in ERISA. Also, AT & T has been designated to carry out the fiduciary responsibilities of the Plan administrator regarding qualified domestic relation orders ("QDROs")[1] as set forth in ERISA.

Defendant MORRIS D. TUCKER is a participant in the Plan. Defendant SANDRA TUCKER is Morris D. Tucker's former spouse. On January 22, 1981, in a proceeding entitled *In re: Marriage of Tucker,* Los Angeles Superior Court Case No. NWD 83405 ("the Tucker divorce proceedings"), the Superior Court for the State of California (hereinafter "family court") entered an order dissolving the Tuckers' marriage, reserving

---

1. Pursuant to the Retirement Equality Act of 1984, Pub.Law 98–397, 98 Stat. 1426, a QDRO is any judgment, decree, or order made pursuant to a state domestic relations law (including community property law) which (1) "creates or recognizes the existence of an alternate payee's right to, or assigns to an alternate payee the right to, receive all or a portion of the benefits payable with respect to a participant under a plan," and (2) "relates to the provision of child support, alimony payments, or marital property rights to a spouse, former spouse, child, or other dependent of a participant." 29 U.S.C. § 1056(d)(3)(B).

jurisdiction over disputed issues. On August 7, 1990, during the Tucker divorce proceedings, the family court ordered the Plan joined to the proceedings as a party in interest pursuant to California Family Code sections 2060–2065. On October 8, 1990, the Plan appeared in the Tucker divorce proceedings and responded to the Order of Joinder and Pleadings, reserving the right to object to any order containing provisions inconsistent with ERISA (including amendments pursuant to the Retirement Equality Act of 1984 ("REA")).

Subsequently, Defendants' counsel, particularly counsel for Sandra Tucker, communicated with the Plan and its counsel regarding the form of the QDRO. In January 1993, Sandra Tucker's counsel proposed a QDRO that would have allowed Sandra Tucker an unlimited right to designate anyone as the beneficiary of her assigned benefits in Morris D. Tucker's pension in the event that Sandra Tucker predeceased Morris D. Tucker. (Ex. 5, attached to Lewis Decl. at 78, 82:7–14.) The Plan objected to the proposed QDRO on the grounds that the proposed order did not meet the requirements for a QDRO within the meaning of ERISA § 206(d)(3)(B)(i), 29 U.S.C. § 1056(d)(3)(B)(i). Defendants contend that the Plan took and maintained a position contrary to California family law. The Plan asserts that its position was entirely meritorious under ERISA and Ninth Circuit case law.[2]

On July 6, 1993, Sandra Tucker obtained a Temporary Restraining Order and Order to Show Cause Re: Preliminary Injunction restraining the Plan from distributing any payments and benefits to Defendant Morris D. Tucker pending further order of the family court. At the hearing on the Order to Show Cause on July 29, 1993, the family court declined to enter an injunction upon the Plan's representation, with the concurrence of Morris D. Tucker, that no payment or benefits due to Morris D. Tucker would be

disbursed prior to an order by the family court. The Plan complied with the representation and held the funds due to Morris D. Tucker until otherwise ordered by the family court. The family court set for trial certain reserved issues, including the form of the QDRO to divide Defendants' respective community property interests in the employee pension benefits held by the Plan and Defendants' application for an award of attorneys' fees against the Plan pursuant to California Family Code section 2030.

In February 1994, counsel for the Plan suggested to Sandra Tucker's counsel that they consider converting their proposed QDRO into a pair of QDROs: one that provided for payment to Sandra Tucker of her community property share of Morris Tucker's pension benefits, and one that provided for payment to the children of Morris and Sandra Tucker, contingent upon Sandra Tucker predeceasing Morris Tucker. (Whitehead Decl. ¶ 7.) Eventually, the Tuckers adopted counsel for the Plan's suggestion. (Id. at ¶ 8.)

On February 24, 1994, the Plan filed a brief in opposition to Defendants' application for an award of attorneys' fees, arguing that ERISA § 514, 29 U.S.C. § 1144, preempted such an award. On May 5, 1994, the United States Secretary of Labor, appearing as *amicus curiae*, filed a brief in opposition to Defendants' application for an award of attorneys' fees, arguing that ERISA § 514, 29 U.S.C. § 1144, preempted the prior order of the family court joining the Plan to the Tucker divorce proceedings. On October 21, 1994, after a hearing, the family court granted Defendants' request for an award of attorneys' fees against the Plan pursuant to California Family Code sections 2030 and 271 and ordered the Plan to pay Defendants $50,680 by December 15, 1994 ("Order for Attorneys' Fees"). The ruling was memorialized in a written order entered on December 28, 1994.[3] The attorneys' fees that the

---

**2.** The Ninth Circuit, in *Ablamis v. Roper*, 937 F.2d 1450 (9th Cir.1991) held that "ERISA, as amended by REA, precludes the testamentary transfer by a deceased spouse of her purported community property interest in a surviving employee spouse's pension benefits", and that to the extent that California law permits such a testa-

mentary transfer, that law is preempted by ERISA. *Id.* at 1460.

**3.** Pursuant to Federal Rule of Evidence 201, the Court takes judicial notice of the documents attached to Plaintiffs' Request for Judicial Notice

family court ordered the Plan to pay were incurred, accordingly to Defendants' counsel, during their communications with the Plan, and in defending their application for attorneys' fees against the objections of the Plan and the Secretary of Labor.

On December 15, 1994, the Plan filed a Notice of Appeal from the Order for Attorneys' Fees. Subsequently, Defendants requested a further award of attorneys' fees against the Plan pursuant to California Family Code sections 2030 and 271 for attorneys' fees expected to be incurred in the Plan's appeal from the Order for Attorneys' Fees. On January 27, 1995, after a hearing, the family court granted Defendants' request, directing the Plan to pay an additional $10,000 to Defendants or their lawyers by February 11, 1995 (hereinafter, the orders of October 21, 1994 and January 27, 1995 for attorneys' fees are referred to collectively as "Orders for Attorneys' Fees").

Also on January 27, 1995, the family court entered two domestic relations orders pursuant to the stipulation of all parties, including the Plan. The Plan has since reviewed these domestic relations orders pursuant to ERISA § 206(d), 29 U.S.C. § 1056(d), and has qualified them as complying with all relevant provisions of ERISA. On March 15, 1995, the Plan filed a Notice of Appeal from the January 27, 1995 Order for additional attorneys' fees.

On April 7, 1995, Plaintiffs filed a Complaint in this Court against Defendants for injunctive and declaratory relief to restrain violations of ERISA.

## II. Defendants' Motion to Dismiss

On June 14, 1995, Defendants filed the instant motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). On July 17, 1995, Plaintiffs filed an opposition to the motion, and on July 24, 1995, Defendants filed a reply to the opposition.

## A. Plaintiff's Allegations

In their Complaint, Plaintiffs allege the undisputed facts recited *supra*. Additionally, the Complaint alleges as follows:

in Support of Motion for Summary Judgment

1. The Plan was not obliged under ERISA or any other applicable law to aid Defendants in their efforts to enter a QDRO in proper form in the family court or to participate in the Tucker divorce proceedings to ensure any order entered by the family court met the criteria for a QDRO as set forth in ERISA. (Compl. ¶ 19.)

2. Plan representatives fully cooperated with Defendants' counsel to fashion a QDRO that satisfied all applicable legal criteria. (Compl. ¶ 19.)

3. The Plan's liabilities under the Orders for Attorneys' Fees are based upon its voluntary extension of assistance to Defendants and their counsel with respect to the proper form of a QDRO. (Compl. ¶ 19.)

4. The family court never reviewed the merits of the Plan's comments and suggestions for the QDROs and never made any finding that said comments and suggestions were contrary to law or made in bad faith. (Compl. ¶ 19.)

5. Compliance with the Orders for Attorneys' Fees or the enforcement of such compliance, would violate Title I of ERISA because the Orders are preempted under ERISA § 514, 29 U.S.C. § 1144. (Compl. ¶ 24.)

6. Compliance with the Orders for Attorneys' Fees or the enforcement of such compliance, would violate Title I of ERISA because the Orders violate both the terms of the Plan and the provisions of ERISA § 206(d)(1), 29 U.S.C. § 1056(d)(1), because the Orders for Attorneys' Fees are not QDROs and constitute a prohibited assignment or alienation of moneys held by the Plan and its trust to provide pension benefits to its participants and beneficiaries, including Defendants. (Compl. § 25.)

7. Compliance with the Orders for Attorneys' Fees or the enforcement of such compliance, would violate Title I of ERISA because compliance with the Orders for Attorneys' Fees would require violation of fiduciary duties imposed upon AT & T under ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1). (Compl. ¶ 26.)

and Exhibits in Support.

**1172**

8. Defendants have threatened and endeavored, and continue to threaten and endeavor, to enforce payment of the sums set forth in the Orders for Attorneys' Fees. (Compl. ¶ 27.)

9. Plaintiffs have no adequate remedy at law. (Compl. ¶ 28.)

10. An actual controversy has arisen between Plaintiffs and Defendants concerning the Orders for Attorneys' Fees. (Compl. ¶ 31.)

11. Plaintiffs pray that this Court enjoin Defendants from continuing or initiating any proceedings to enforce compliance by Plaintiffs with the Orders for Attorneys' Fees or any similar orders. (Compl. at 12:9–20.)

12. Plaintiffs pray that this Court issue a judgment declaring that the Orders for Attorneys' Fees are 1) preempted by ERISA § 514, 29 U.S.C. § 1144, 2) violate both the terms of the Plan and the provisions of ERISA § 206(d)(1), 29 U.S.C. § 1056(d)(1), because the Orders for Attorneys' Fees are not QDROs and constitute a prohibited assignment or alienation of moneys held by the Plan, and 3) require the Plan's fiduciaries to violate the provisions of ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), and therefore are invalid and unenforceable against the Plan or its fiduciaries. (Compl. at 12:22–13:8.)

**B. Standard**

A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in the complaint. Rule 12(b)(6) must be read in conjunction with Rule 8(a) which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990). Therefore, a court must not dismiss a complaint for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Moore v. City of Costa Mesa,* 886 F.2d 260, 262 (9th Cir.1989) (quoting *Conley v. Gibson* ), *cert. denied,* 496 U.S. 906, 110 S.Ct. 2588, 110 L.Ed.2d 269 (1990); *see Haddock v. Board of Dental Ex-*

*aminers of California,* 777 F.2d 462, 464 (9th Cir.1985) (complaint should not be dismissed if it states a claim under any legal theory, even if the plaintiff erroneously relies on a different legal theory).

A court must accept as true all material allegations in the complaint, as well as reasonable inferences to be drawn from them. *NL Industries, Inc. v. Kaplan,* 792 F.2d 896, 898 (9th Cir.1986); *see also Russell v. Landrieu,* 621 F.2d 1037, 1039 (9th Cir.1980) (finding that the complaint must be read in the light most favorable to the plaintiff). However, a court need not accept as true unreasonable inferences or conclusory legal allegations cast in the form of factual allegations. *Western Min. Council v. Watt,* 643 F.2d 618, 624 (9th Cir.), *cert. denied,* 454 U.S. 1031, 102 S.Ct. 567, 70 L.Ed.2d 474 (1981).

Furthermore, unless a court converts a Rule 12(b)(6) motion into a motion for summary judgment, a court cannot consider material outside of the complaint (e.g., facts presented in briefs, affidavits, or discovery materials). *Levine v. Diamanthuset, Inc.,* 950 F.2d 1478, 1483 (9th Cir.1991). A court may, however, consider exhibits submitted with the complaint and matters that may be judicially noticed pursuant to Federal Rule of Evidence 201. *Hal Roach Studios, Inc. v. Richard Feiner & Co.,* 896 F.2d 1542, 1555 n. 19 (9th Cir.1989); *Mack v. South Bay Beer Distributors, Inc.,* 798 F.2d 1279, 1282 (9th Cir.1986).

For all of these reasons, it is only under extraordinary circumstances that dismissal is proper under Rule 12(b)(6). *United States v. City of Redwood City,* 640 F.2d 963, 966 (9th Cir.1981).

**C. Analysis**

Defendants contend that Plaintiffs' claim for injunctive and declaratory relief fails to state a claim upon which relief can be granted because the relief Plaintiffs seek is barred by the Anti–Injunction Act, 28 U.S.C. § 2283. Plaintiffs assert that the Anti–Injunction Act does not apply to the claims alleged in the Complaint.

The Anti–Injunction Act provides as follows:

A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.

28 U.S.C. § 2283. In their Complaint, Plaintiffs pray that this Court enjoin Defendants from continuing or initiating any proceedings to enforce compliance by Plaintiffs with the Orders for Attorneys' Fees or any similar orders. (Compl. 12:9–20.) Therefore, unless one of the three exceptions set forth in the Anti–Injunction Act applies, this Court may not grant the injunctive relief that Plaintiffs seek. *See Atlantic Coast Line Railroad Co. v. Brotherhood of Locomotive Engineers,* 398 U.S. 281, 286, 90 S.Ct. 1739, 1743, 26 L.Ed.2d 234 (1970) (holding that any injunction against state court proceedings must be based on one of three specific statutory exceptions).

■ Plaintiffs assert, however, that their claims fall within the "expressly authorized" exception to the Anti–Injunction Act because ERISA authorizes the injunctive relief they seek. The Supreme Court set forth the criteria for the "expressly authorized" exception in *Mitchum v. Foster,* 407 U.S. 225, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972). The "federal law need not contain an express reference" to the anti-injunction statute, and "need not expressly authorize an injunction of a state court proceeding[.]" *Id.* at 237, 92 S.Ct. at 2159. Nevertheless, the federal law "must have created a specific and uniquely federal right or remedy, enforceable in a federal court of equity, that could be frustrated if the federal court were not empowered to enjoin a state court proceeding." *Id.* The Supreme Court explained further as follows:

> This is not to say that in order to come within the exception an Act of Congress must, on its face and in every one of its provisions, be totally incompatible with the prohibition of the anti-injunctive statute. The test, rather, is whether an Act of Congress, clearly creating a federal right or remedy enforceable in a federal court of

equity, could be given its intended scope only by the stay of a state court proceeding.

*Id.* at 237–38, 92 S.Ct. at 2159–60.

■ Plaintiffs bring this action pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3). That section provides, in pertinent part, as follows:

> A civil action may be brought—
>
> .    .    .    .    .
>
> (3) by a … fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan[.]

29 U.S.C. § 1132(a)(3). Thus, ERISA, an Act of Congress, specifically authorizes a federal court to provide injunctive or other appropriate equitable relief to fiduciaries of ERISA plans for violations of ERISA. Furthermore, this remedy is uniquely federal because federal courts have exclusive jurisdiction in civil actions brought pursuant to ERISA. 29 U.S.C. § 1132(e)(1). Therefore, as Plaintiff AT & T is a fiduciary of the Plan, AT & T may bring an action for injunctive relief for violations of ERISA under section 1132(a)(3), and this Court is not barred under the Anti–Injunction Act from granting such injunctive relief. Accordingly, the Complaint adequately alleges a claim pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), and Defendants' motion to dismiss must be denied.[4] Consequently, Defendants' request for attorneys' fees is also denied.

### III. Plaintiff's Motion for Summary Judgment

On June 20, 1995, Plaintiffs filed the instant motion for summary judgment. On June 29, 1995, the Court ordered that the United States Secretary of Labor be allowed to file a brief as *amicus curiae* in support of Plaintiffs' motion for summary judgment. On July 10, 1995, Defendants filed an opposition to Plaintiffs' summary judgment motion.

---

**4.** The Court discusses the merits of Plaintiffs' claims in its discussion of Plaintiffs' motion for summary judgment *infra.*

On July 11, 1995, the Secretary of Labor filed an amicus brief in support of Plaintiffs' summary judgment motion. On July 24, 1995, Plaintiffs filed a reply to Defendants' opposition.

## A. Standard

It is the burden of the party who moves for summary judgment to establish that there is "no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *British Airways Bd. v. Boeing Co.*, 585 F.2d 946, 951 (9th Cir.1978), *cert. denied*, 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 241 (1979). If the moving party has the burden of proof at trial (the plaintiff on a claim for relief, or the defendant on an affirmative defense), the moving party must make a showing sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party. *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. Schwarzer, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487–88 (1984)). This means that, if the moving party has the burden of proof at trial, that party must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in that party's favor. *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir.1986). Furthermore, the court must view the evidence presented to establish these elements "through the prism of the substantive evidentiary burden." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986).

If the opponent has the burden of proof at trial, then the moving party has no burden to negate the opponent's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In other words, the moving party does not have the burden to produce *any* evidence showing the absence of a genuine issue of material fact. *Id.* at 325, 106 S.Ct. at 2554. "Instead, ... the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.*

Once the moving party satisfies this initial burden, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings ... [T]he adverse party's response ... *must set forth specific facts* showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e) (emphasis added). A "genuine issue" of material fact exists only when the nonmoving party makes a sufficient showing to establish an essential element to that party's case, and on which that party would bear the burden of proof at trial. *Celotex*, 477 U.S. at 322–23, 106 S.Ct. at 2552–53. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which a reasonable jury could reasonably find for plaintiff." *Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512. The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor. *Id.* at 248, 106 S.Ct. at 2510; *Griffeth v. Utah Power & Light Co.*, 226 F.2d 661, 669 (9th Cir.1955).

## B. Analysis

The Complaint alleges a claim for injunctive and declaratory relief. The injunctive relief sought by Plaintiffs is a judgment enjoining Defendants from continuing or initiating any proceedings to enforce compliance by Plaintiffs with the Orders for Attorneys' Fees or any similar orders. (Compl. at 12:9–20.) The declaratory relief sought by Plaintiff is a three-fold judgment declaring that: 1) the Orders for Attorneys' Fees are preempted by ERISA § 514, 29 U.S.C. § 1144, 2) the Orders for Attorneys' Fees violate both the terms of the Plan and the provisions of ERISA § 206(d)(1), 29 U.S.C. § 1056(d)(1), because the Orders for Attorneys' Fees are not QDROs and constitute a prohibited assignment or alienation of moneys held by the Plan, and 3) the Orders for Attorneys' Fees require the Plan's fiduciaries to violate the provisions of ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), and therefore are invalid and unenforceable against the Plan or its fiduciaries. (Compl.

at 12:22–13:8.)[5] Because the injunctive relief sought by Plaintiffs is based, in large part, upon the declaratory relief sought, the Court analyzes Plaintiffs' claim for declaratory relief first.

1. *Are the Orders for Attorneys' Fees preempted under ERISA § 514, 29 U.S.C. § 1144?*

Plaintiffs allege that compliance with the Orders for Attorneys' Fees or the enforcement of such compliance, would violate Title I of ERISA because the Orders are preempted under ERISA § 514, 29 U.S.C. § 1144. (Compl. ¶ 24.)

ERISA § 514, 29 U.S.C. § 1144(a), provides, in pertinent part, that the provisions of ERISA governing employee benefit plans "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" governed by ERISA. 29 U.S.C. § 1144(a). ERISA defines "State law" as including "all laws, decisions, rules, regulations, or other State action having the effect of law." 29 U.S.C. § 1144(c)(1). Accordingly, the Orders for Attorneys' Fees are "State law" as that term is used in the ERISA preemption clause.

It is well-established that ERISA's preemption clause is "clearly expansive", *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, —— U.S. ——, ——, 115 S.Ct. 1671, 1677, 131 L.Ed.2d 695 (1995), "conspicuous for its breadth", *FMC Corp. v. Holliday*, 498 U.S. 52, 58, 111 S.Ct. 403, 407, 112 L.Ed.2d 356 (1990), and "one of the broadest preemption clauses ever enacted by Congress," *Evans v. Safeco Life Ins. Co.*, 916 F.2d 1437, 1439 (9th Cir.1990). The "deliberately expansive" language of the ERISA preemption clause was "designed to 'establish pension plan regulation as exclusively a federal concern.'" *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 46, 107 S.Ct. 1549, 1552, 95 L.Ed.2d 39 (1987) (quoting *Alessi v. Raybestos–Manhattan, Inc.*, 451

U.S. 504, 523, 101 S.Ct. 1895, 1906, 68 L.Ed.2d 402 (1981)); *accord Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, 138, 111 S.Ct. 478, 482, 112 L.Ed.2d 474 (1990). The California Supreme Court has repeatedly recognized that "ERISA's preemption clause is conspicuous for its breadth, establishing as an area of exclusive federal concern the subject of every State law that 'relates to' an employee benefit plan governed by ERISA." *Marshall v. Bankers Life and Casualty Co.*, 2 Cal.4th 1045, 1051, 10 Cal.Rptr.2d 72, 832 P.2d 573 (1992) (citation omitted); *accord Southern California Chapter of Associated Builders and Contractors Inc. Joint Apprenticeship Committee v. California Apprenticeship Council*, 4 Cal.4th 422, 435, 14 Cal. Rptr.2d 491, 841 P.2d 1011 (1992).

Moreover, Congress used the words "relate to" in their broad sense, rejecting more limited pre-emption language. *Ingersoll–Rand Co.*, 498 U.S. at 137, 111 S.Ct. at 482. "A law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96–97, 103 S.Ct. 2890, 2899–2900, 77 L.Ed.2d 490 (1983). "Under this 'broad common-sense meaning,' a state law may 'relate to' a benefit plan, and thereby be pre-empted, even if the law is not specifically designed to affect such plans, or the effect is only indirect." *Ingersoll–Rand Co.*, 498 U.S. at 139, 111 S.Ct. at 483 (quoting *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 47, 107 S.Ct. 1549, 1552, 95 L.Ed.2d 39 (1987)).

Obviously, a judicial decision assessing attorneys' fees against a pension plan, regardless of the reason, relates to the pension plan. Therefore, on this basis alone, ERISA preempts the Orders for Attorneys' Fees.

Defendants argue that the relationship between the Orders for Attorneys' Fees and the Plan is "too tenuous, remote, or peripheral" for the Orders for Attorneys' Fees to be

---

5. The United States Secretary of Labor, appearing as *amicus curiae*, urges that ERISA preempts provisions of the California Family Code that permit an employee benefit plan to be joined as a party in a divorce action. Plaintiffs, in their briefing on this motion, do the same. However, as the Plan appeared in the Tucker divorce proceedings without ever objecting to the Order of Joinder that joined the Plan to those proceedings, the facts of this case do not present this issue. Nor does the Complaint in this action directly present this issue. Accordingly, the Court does not reach this issue, but decides this matter on more narrow grounds.

**1176**

preempted. (*See* Defs.' Opp'n Summ.J.Mot. at 15:3–16:4.) Defendants' argument is utterly meritless. Indeed, it is difficult to imagine a closer or more direct relationship between a judicial decision and an employee benefit plan than the assessment of attorneys' fees at issue in this case.

2. *Do the Orders for Attorneys' Fees violate both the terms of the Plan and the provisions of ERISA § 206(d)(1), 29 U.S.C. § 1056(d)(1), because the Orders for Attorneys' Fees are not QDROs and constitute a prohibited assignment or alienation of moneys held by the Plan?*

■ Plaintiffs allege that compliance with the Orders for Attorneys' Fees or the enforcement of such compliance, would violate Title I of ERISA because the Orders violate both the terms of the Plan and the provisions of ERISA § 206(d)(1), 29 U.S.C. § 1056(d)(1), due to the fact that the Orders for Attorneys' Fees are not QDROs and constitute a prohibited assignment or alienation of moneys held by the Plan and its trust to provide pension benefits to its participants and beneficiaries, including Defendants. (Compl. ¶ 25.)

ERISA § 206(d)(1), 29 U.S.C. § 1056(d)(1), commonly known as the "spendthrift" or "anti-alienation" clause, states that "[e]ach pension plan shall provide that benefits provided under the plan may not be assigned or alienated." 29 U.S.C. § 1056(d)(1). Congress included the anti-alienation clause in ERISA to safeguard the financial well-being of pensioners and their dependents. *Ablamis v. Roper*, 937 F.2d 1450, 1453 (9th Cir. 1991). The Supreme Court has strictly construed this anti-alienation provision, stating that any exceptions to it must be expressly mandated by Congress. *Guidry v. Sheet Metal Workers National Pension Fund*, 493 U.S. 365, 376, 110 S.Ct. 680, 687, 107 L.Ed.2d 782 (1990).

■ Congress passed the Retirement Equity Act of 1984 (REA), Pub.Law 98–397, 98 Stat. 1426, to amend ERISA so as to create "an express statutory exception to the prohibition on assignment and alienation in the case of distributions made pursuant to certain state court orders: ERISA's spendthrift provisions are not applicable to a 'qualified domestic relations order' (QDRO)." *Ablamis*, 937 F.2d at 1454. Therefore, "[a] court may divide spousal rights in pension benefits through the mechanism of a QDRO and award the non-employee spouse her appropriate share of those benefits—but only if the domestic relations order is a 'qualified' one as defined in the REA." *Id.* "Only 'qualified' domestic relations orders are exempt from ERISA's spendthrift provisions; other domestic relations orders are expressly made subject to the anti-assignment provision and are, as a result, preempted." *Id.*

It is undisputed that the Orders for Attorneys' Fees are not QDROs. Accordingly, the Orders of Attorneys' Fees violate ERISA's anti-alienation clause, and are therefore, preempted. Likewise, compliance with the Orders for Attorneys' Fees or the enforcement of such compliance, would violate Title I of ERISA.

3. *Do the Orders for Attorneys' Fees require the Plan's fiduciaries to violate the provisions of ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), and therefore are invalid and unenforceable against the Plan or its fiduciaries?*

Plaintiffs allege that compliance with the Orders for Attorneys' Fees or the enforcement of such compliance, would violate Title I of ERISA because compliance with the Orders for Attorneys' Fees would require violation of fiduciary duties imposed upon AT & T under ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1). (Compl. ¶ 26.)

ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1) provides, in pertinent part, as follows:

[A] a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—

(A) for the exclusive purpose of:

(i) providing benefits to participants and their beneficiaries; and

(ii) defraying reasonable expenses of administering the plan;

(B) with the care, skill, prudence, and diligence under the circumstances then

prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;

.    .    .    .    .

(D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter ...

29 U.S.C. § 1104(a)(1). The fiduciary duty imposed by section 1104(a)(1) applies to a plan's duties with respect to qualifying a proposed domestic relations order. ERISA, as amended by the REA, sets out those duties in great detail.

The following examples are typical of a plan's duties with respect to qualifying a proposed domestic relations order. A plan must establish written procedures: 1) by which affected persons are notified regarding the procedures governing QDROs, 2) that allow alternate payees to designate a representative to receive such notices, and 3) to determine the qualified status of domestic relations orders and to administer distributions under such qualified orders. 29 U.S.C. § 1056(d)(3)(G)(i) and (ii). The plan administrator, upon receipt of any domestic relations order, must promptly notify the participant and any alternate payee of the receipt of such order, and must, within a reasonable time, review each domestic relations order and determine whether it is a qualified domestic relations order and notify the participant and each alternate payee of such determination. 29 U.S.C. § 1056(d)(3)(G). While the plan administrator is determining whether a domestic relations order is qualified, the plan must separately account for the amounts that would have been payable to the alternate payee during such period if the order had been determined to be a QDRO. 29 U.S.C. § 1056(d)(3)(H).

Thus, in enacting the REA, thereby amending ERISA, Congress committed all decisions concerning the qualified status of a domestic relations order exclusively to the sole discretion of the plan administrator. Therefore, any state law that interferes with

those decisions is preempted under ERISA's preemption clause.

The family court awarded attorneys' fees against the Plan pursuant to California Family Code sections 2030 and 271. California Family Code section 2030 provides, in pertinent part, as follows:

During the pendency of a proceeding for dissolution of marriage, ... the court may, upon (1) determining an ability to pay and (2) consideration of the respective incomes and needs of the parties in order to ensure that each party has access to legal representation to preserve all of the party's rights, order any party ... to pay the amount reasonably necessary for attorney's fees....

. . . .

Any order requiring a party who is not the spouse of another party to the proceeding to pay attorney's fees or costs shall be limited to an amount reasonably necessary to maintain or defend the action on the issues relating to that party.

Cal.Fam.Code § 2030 (West 1994). California Family Code section 271 provides, in pertinent part, as follows:

[T]he court may base an award of attorney's fees and costs on the extent to which the conduct of each party or attorney furthers or frustrates the policy of the law to promote settlement of litigation and, where possible, to reduce the cost of litigation by encouraging cooperation between the parties and attorneys.

Cal.Fam.Code § 271 (West 1994). In the instant case, an award of attorneys' fees against the Plan under either statute impermissibly interferes with the Plan's decisions regarding the qualification of the proposed domestic relations order.

Defendants assert that the family court awarded attorneys' fees against the Plan because the family court "determined that Plaintiffs had taken a position inconsistent with California law ... [and] that Plaintiffs refused to negotiate on the issue, necessitating the parties to engage in extensive litigation. (Defs' Opp'n Summ.J.Mot. at 6:1-9.) Defendants also assert that the family court awarded attorneys' fees against the Plan be-

cause "Plaintiffs did not act like a disinterested bystander", but rather "fought Sandra Tucker for 3½ years on her fundamental right to designate her children as alternate payees of her 22.8% of the pension." (*Id.* at 10:10–13.) However, even if Defendants' assertions are true, such conduct cannot subject the Plan to an award of attorneys' fees.

█ Under ERISA, as amended by the REA, Congress has committed all decisions concerning the qualification of a proposed domestic relations order exclusively to the sole discretion of the plan administrator. Therefore, a plan administrator's refusal to qualify a domestic relations order cannot be grounds for an award of attorneys' fees against it. To allow a state court to make such an award would impermissibly interfere with the Plan's fiduciary duties under ERISA. Accordingly, compliance with the Orders for Attorneys' Fees or the enforcement of such compliance, would violate Title I of ERISA because compliance with the Orders for Attorneys' Fees would require violation of fiduciary duties imposed upon AT & T under ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1).

### 4. Is Injunctive Relief Warranted?

█ A court may, in its discretion, award permanent injunctive relief when legal remedies are inadequate and irreparable injury is likely. *See, e.g. Weinberger v. Romero–Barcelo*, 456 U.S. 305, 312, 102 S.Ct. 1798, 1803, 72 L.Ed.2d 91 (1982). As explained *supra*, this Court finds that compliance with, or enforcement of compliance with the Orders for Attorneys' Fees will require the Plan to violate both the terms of the Plan and the provisions of ERISA. Therefore, the Court concludes that legal remedies are inadequate and that, if injunctive relief were denied, the Plan would likely suffer irreparable injury. Accordingly, the Court finds that the injunctive relief sought is warranted.

### IV. Conclusion

For all the reasons above, the Court DENIES Defendants' Motion to Dismiss Pursuant to Rule 12(b)(6), DENIES Defendants' request for an award of attorneys' fees, and

GRANTS Plaintiffs' Motion for Summary Judgment. The Court ORDERS as follows:

1. A judgment be entered declaring that:

a. The Orders for Attorneys' Fees are preempted by ERISA § 514, 29 U.S.C. § 1144;

b. The Orders for Attorneys' Fees violate both the terms of the Plan and the provisions of ERISA § 206(d)(1), 29 U.S.C. § 1056(d)(1), because the Orders for Attorneys' Fees are not QDROs and constitute a prohibited assignment or alienation of moneys held by the Plan; and

c. The Orders for Attorneys' Fees require the Plan's fiduciaries to violate the provisions of ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), and therefore are invalid and unenforceable against the Plan or its fiduciaries.

2. A judgment be entered that Defendants are enjoined from continuing or initiating any proceedings to enforce compliance by Plaintiffs with the Orders for Attorneys' Fees or any similar orders.

**SO ORDERED.**