727 A.2d 473 (1999)
320 N.J. Super. 371
John R. JOHNSON, III, Plaintiff-Respondent,
v.
Sharon JOHNSON, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Submitted March 24, 1999.
Decided April 9, 1999.
*475 Tomar, Simonoff, Adourian, O'Brien, Kaplan, Jacoby & Graziano, for appellant United Association of Journeyman Plumbers and Pipe Fitters Local Union 322 Annuity Fund (Mark E. Belland and Deborah L. Mains, on the brief).
No brief filed on behalf of the respondents.
Before Judges KING, WALLACE and NEWMAN.
*474 The opinion of the court was delivered by KING, P.J.A.D.
I
This is an appeal by the United Association of Journeyman Plumbers and Pipe Fitters Local 322 Annuity Fund (Annuity Fund) from orders requiring it to pay the Johnsons' attorneys' fees in their divorce action. Plaintiff John R. Johnson, III, is the participant spouse in the union's Annuity Fund which contends the provisions in paragraph fifteen of the Johnsons' dual final judgment of divorce and the post-judgment orders which require payment of attorneys' fees from the fund constitute an assignment of benefits expressly prohibited by the Employee Retirement Income Security Act of 1974 (ERISA), the Internal Revenue Code (IRC), and the Annuity Plan. We agree with the Annuity Fund and reverse the orders compelling payment of the parties' attorneys' fees by the ERISA-qualified retirement plan.
II
On March 28, 1996 a dual final judgment of divorce was entered in the Family Part, Camden County dissolving the marriage of the parties, Sharon Johnson, age 41, and John R. Johnson, III, age 39. Paragraph four of the divorce judgment stated the value or balance of plaintiff-husband John Johnson's interest in the Annuity Fund totalled $17,840.08 in September 1995. There was also an $8,510.54 separate account balance in the Annuity Fund in defendant-wife Sharon Johnson's name as of September 1995. Paragraph four of the divorce judgment also required that Sharon Johnson transfer this $8,510.54 balance to John Johnson and that she sign any and all waivers or execute any Qualified Domestic Relation Orders (QDRO's) to effect that transfer, together with any accumulated interest or dividends on the balance.
Paragraph fifteen of the divorce judgment stated:
From the annuity which has been refunded to the plaintiff, JOHN R. JOHNSON, III, $8000.00 shall be withdrawn and shall be paid to the attorneys in the following sums:
(a) Louise D. Donaldson, Esquire $4000.00
(b) Leslie J. Jandoli, Esquire $4000.00
Mr. Jandoli represented plaintiff John Johnson and Ms. Donaldson represented defendant Sharon Johnson in the divorce proceedings.
Sharon Johnson filed a notice of motion to enforce litigant's rights returnable December 13, 1996 requesting, among other things, an order requiring John Johnson to pay her attorney's fees pursuant to paragraph fifteen of the divorce judgment. On February 24, 1997 the judge entered an order which required
That the administrator of the pension/annuity fund of the plaintiff, John R. Johnson, III, through Local 322, Plumbers and *476 Steamfitters Union, shall pay to Louise D. Donaldson, Esquire, attorney for the defendant, Sharon Johnson, the sum of Four Thousand ($4,000.00) Dollars and to Leslie J. Jandoli, Esquire, attorney for the plaintiff, John R. Johnson, III, the sum of Four Thousand ($4,000.00) Dollars, after deduction of $800.00 per payment, to satisfy the required income tax and penalty assessments. Said payment shall be made within 30 days.
This judicial order for counsel fees was obviously a result of the settlement of the matrimonial litigation which involved the marital home, child support, alimony, debts, visitation, custody, personal property, and other customary issues.
On April 18, 1997 the Annuity Fund's then-attorneys, Brown & Connery, sent a letter to the judge stating the Annuity Fund could not comply with his order. The letter, in pertinent part, said:
Neither ERISA nor Local 322's Pension and Annuity Fund Plans permit the disbursement of Fund assets to pay for attorneys' fees incurred in a divorce action. Complying with this Order could jeopardize the tax exempt status of our Plan.
We are therefore unable to comply with Your Honor's Order.
In response to the Annuity Fund's April 18, 1997 letter, the judge held a conference with the Annuity Fund's and the Johnsons' attorneys on June 3, 1997. The judge reaffirmed his earlier direction of payment of attorney's fees from the Annuity Fund. On June 9, 1997 the Annuity Fund's attorney sent a confirming letter to the judge summarizing the outcome of the June 3, 1997 conference. The letter stated in pertinent part:
Your Honor rejected the authority we cited and reiterated the Order directing that the Annuity Plan pay the attorneys' fees to counsel as directed. In light of Your Honor's ruling rejecting our objection to make such payments, we will comply with the Order.
By copy of this letter, we are advising Ms. Donaldson and Mr. Jandoli that we will direct the Fund to pay them $4,000 each from Mr. Johnson's Annuity Fund pursuant to the Order.
The Annuity Fund's attorneys, Brown & Connery, sent the attorneys, Ms. Donaldson and Mr. Jandoli, a letter dated July 3, 1997 stating the Annuity Fund administrator had directed its custodian bank to issue their $4,000 checks for their attorneys' fees.
John Johnson's attorney, Mr. Jandoli, eventually filed a motion to enforce litigant's rights, returnable December 5, 1997, requesting an order requiring the Local 322 Annuity Fund to comply with the court's prior February 24, 1997 order which compelled the Annuity Fund to pay the parties' attorneys' fees. This motion was apparently postponed until January 1998. In his certification, Mr. Jandoli stated the office of Tomar, Simonoff, Adourian, O'Brien, Kaplan, Jacoby & Graziano had replaced Brown & Connery as attorneys for the Annuity Fund. Mr. Jandoli also stated Ms. Donaldson no longer represented Sharon Johnson. Attorney Nan S. Famular, Esquire, replaced Ms. Donaldson as Sharon Johnson's attorney.
The Annuity Fund, through Tomar Simonoff's office, then filed a notice of cross-motion returnable January 9, 1998 requesting (1) dismissal of John Johnson's attorney's motion to enforce litigant's rights, (2) the judge's February 24, 1997 order be vacated, and (3) paragraph fifteen of the divorce judgment also be vacated.
The judge heard oral arguments on this application on January 14, 1998. Mr. Jandoli appeared for John Johnson. The Annuity Fund's attorney argued it was not a party to the case and could not be bound by the divorce judgment. The Annuity Fund also argued that under ERISA the judge could not order it to pay the attorneys' fees. The judge ruled that he would join the Annuity Fund as a party and reaffirm his February 24, 1997 order. On January 26, 1998 the judge entered an order joining the Annuity Fund as a party and affirmed his prior order of February 24, 1997 compelling the Annuity Fund to pay John and Sharon Johnson's attorneys' fees.
*477 III
The Annuity Fund sought relief under R. 4:50-1(f) from the order compelling it to pay the Johnsons' attorneys' fees. The Annuity Fund contends if it complies with the judge's orders it will violate IRC § 401(a), ERISA §§ 404(a) and 502(a), and paragraph 11.11 of John Johnson's Annuity Plan. The Annuity Fund also contends compliance with the judge's orders will jeopardize its tax-exempt status and subject its trustees to liability for breach of fiduciary duty by Plan participants and the United States Department of Labor. The Johnson respondents did not participate in this appeal.
Relief from a judgment or order is provided for under our court rules:
On motion, with briefs, and upon such terms as are just, the court may relieve a party or the party's legal representative from a final judgment or order for the following reasons:
* * *
(f) any other reason justifying relief from the operation of the judgment or order.
[R. 4:50-1(f).]
Granting or denying a motion under R. 4:50-1(f) is addressed to the motion judge's sound discretion. Housing Authority of Town of Morristown v. Little, 135 N.J. 274, 286, 639 A.2d 286 (1994). "Because of the importance that we attach to the finality of judgments, relief under Rule 4:50-1(f) is available only when `truly exceptional circumstances are present.'" Ibid. (quoting Baumann v. Marinaro, 95 N.J. 380, 395, 471 A.2d 395 (1984)). Judge Pressler explains a motion to vacate a judgment based on any of the six specified grounds in R. 4:50-1 should be granted sparingly. Pressler, Current N.J. Court Rules, comment 1.1 on R. 4:50-1 (1999). Each case brought under a R. 4:50-1(f) motion must be resolved on its own particular facts. Baumann v. Marinaro, 95 N.J. at 395, 471 A.2d 395. The movant must demonstrate the circumstances are exceptional and enforcement of the judgment or order would be unjust, oppressive or inequitable. Quagliato v. Bodner, 115 N.J.Super. 133, 138, 278 A.2d 500 (App.Div.1971). In such exceptional circumstances, R. 4:50-1(f)'s "boundaries are as expansive as the need to achieve equity and justice." Court Invest. Co. v. Perillo, 48 N.J. 334, 341, 225 A.2d 352 (1966).
Appellate review of a motion judge's ruling on a R. 4:50-1(f) motion is the abuse of discretion standard. Housing Authority of Town of Morristown v. Little, 135 N.J. at 283, 639 A.2d 286. However, if a judge makes a discretionary decision but acts under a misconception of the applicable law or misapplies the applicable law to the facts, an appellate court need not extend deference. We must adjudicate the controversy in light of the applicable law to avoid a manifest denial of justice. State v. Steele, 92 N.J.Super. 498, 507, 224 A.2d 132 (App.Div.1966); Kavanaugh v. Quigley, 63 N.J.Super. 153, 158, 164 A.2d 179 (App.Div.1960); O'Neill v. City of Newark, 304 N.J.Super. 543, 550, 701 A.2d 717 (App.Div.1997). We consider the Annuity Fund's motion for relief from judgment as filed within a reasonable time. See R. 4:50-2.
The Annuity Fund is established and maintained pursuant to the provisions of ERISA, 29 U.S.C.A. § 1001 to -1461, and the IRC, 26 U.S.C.A. § 401 to -419A. The Annuity Fund understandably contends it is required to comply with all the provisions of ERISA and the IRC. Congress enacted ERISA to protect the welfare of employees and their dependents who depend on retirement plans. Hawxhurst v. Hawxhurst, 318 N.J.Super. 72, 82-83, 723 A.2d 58 (App.Div.1998); Ablamis v. Roper. 937 F.2d 1450, 1453 (9th Cir.1991).
ERISA has an antialienation provision which states: "Each pension plan shall provide that benefits provided under the plan may not be assigned or alienated." 29 U.S.C.A. § 1056(d)(1). The United States Supreme Court stated this provision "reflects a considered congressional policy choice, a decision to safeguard a stream of income for pensioners . . . even if that decision prevents others from securing relief for the wrongs done them." Guidry v. Sheet Metal Workers Nat'l Pension Fund, 493 U.S. 365, 376, 110 S.Ct. 680, 107 L.Ed.2d 782 (1990). The IRC has a similar antialienation provision which states, "In general.A trust shall not constitute *478 a qualified trust under this section unless the plan of which such trust is a part provides that benefits provided under the plan may not be assigned or alienated." 26 U.S.C.A. § 401(a)(13)(A).
The Department of the Treasury declares the definition of assignment and alienation includes:
Any direct or indirect arrangement (whether revocable or irrevocable) whereby a party acquires from a participant or beneficiary a right or interest enforceable against the plan in, or to, all or any part of a plan benefit payment which is, or may become, payable to the participant or beneficiary.
[26 C.F.R. § 1.401(a)-13(c)(1)(ii).] The Annuity Fund's provisions demonstrate its compliance with ERISA and the IRC's antialienation provisions. Paragraph 11.11 of the Annuity Fund states,
To the end of making it impossible for participants covered by this Plan improvidently to imperil the provisions made for their support and welfare by directly or indirectly anticipating, pledging, or disposing of their benefit payments hereunder, it is hereby expressly stipulated that no participant hereunder shall have the right to assign, alienate, transfer, sell, hypothecate, mortgage, encumber, pledge, commute, or anticipate any benefit payments and that such payments shall not in any way be subject to any legal process to levy execution upon or attachment or garnishment proceedings against the same for the payments of any claim against any participant nor shall such payments be subject to the jurisdiction of any bankruptcy court for insolvency proceedings by operation of law or otherwise.
Question 25 in the question and answer section of the Annuity Fund's booklet states,
May I assign, sell or transfer my rights under the Plan?
No. This is not allowed by the Annuity Plan. All payments from the Fund must be made directly to the participant, his spouse or his beneficiary. (emphasis in original.)
Here, paragraph fifteen of the divorce judgment created a direct arrangement through which the Johnsons' attorneys acquired an interest presently enforceable against the plan. Paragraph fifteen, together with the orders of February 24, 1997 and January 26, 1998 compelling the Annuity Fund to pay the Johnsons' attorneys' fees, facially violated ERISA's antialienation provision codified in 29 U.S.C.A. § 1056(d)(1).
There are only two exceptions to ERISA's antialienation provision. The first exception permits "any voluntary and revocable assignment of not to exceed 10 percent of any benefit payment...." 29 U.S.C.A. § 1056(d)(2). This first exception does not apply to the present situation because benefits are not currently payable, according to this record. Benefits are not payable until retirement at age 55 or later, six months after complete withdrawal from active employment with the local, or after six consecutive months of working in non-covered employment. The second exception is for qualified domestic relations orders (QDRO) which meet precise statutory requirements. 29 U.S.C.A. § 1056(d)(3)(A). Exceptions to ERISA's antialienation provision are strictly construed and exceptions must be expressly mandated by Congress. Guidry v. Sheet Metal Workers National Pension Fund, 493 U.S. at 375-77, 110 S.Ct. 680.
Congress expressly mandated the second exception which states, in part, that the antialienation provision
shall not apply if the order is determined to be a qualified domestic relations order. Each pension plan shall provide for the payment of benefits in accordance with the applicable requirements of any qualified domestic relations order.
[29 U.S.C.A. § 1056(d)(3)(A).]
ERISA defines a QDRO as a domestic relations order "which creates or recognizes the existence of an alternate payee's right to, or assigns to an alternate payee the right to, receive all or a portion of the benefits payable with respect to a participant under a plan, and with respect to which the requirements of subparagraphs (C) and (D) are met." 29 U.S.C.A. § 1056(d)(3)(B)(i). It defines a domestic relations order as "any judgment, *479 decree, or order (including approval of a property settlement agreement) which relates to the provision of child support, alimony payments, or marital property rights to a spouse, former spouse, child, or other dependent of a participant, and is made pursuant to a State domestic relations law (including a community property law)." 29 U.S.C.A. § 1056(d)(3)(B)(ii).
QDRO's must meet certain requirements for exemption from ERISA's antialienation provision:
(C) A domestic relations order meets the requirements of this subparagraph only if such order clearly specifies
(i) the name and the last known mailing address (if any) of the participant and the name and mailing address of each alternate payee covered by the order,
(ii) the amount or percentage of the participant's benefits to be paid by the plan to each such alternate payee, or the manner in which such amount or percentage is to be determined,
(iii) the number of payments or period to which such order applies, and
(iv) each plan to which such order applies.
(D) A domestic relations order meets the requirements of this subparagraph only if such order
(i) does not require a plan to provide any type or form of benefit, or any option, not otherwise provided under the plan,
(ii) does not require the plan to provide increased benefits (determined on the basis of actuarial value), and
(iii) does not require the payment of benefits to an alternate payee which are required to be paid to another alternate payee under another order previously determined to be a qualified domestic relations order.
[29 U.S.C.A. § 1056(d)(3)(C) and (D).]
Here, the judge neither considered nor applied the pertinent law.
Mindful that exceptions to ERISA's antialienation provisions are strictly construed, we find the QDRO exception to ERISA's antialienation provision is not applicable; the divorce judgment, the February 24, 1997 order, and the January 26, 1998 order did not meet ERISA's requirements of a QDRO. 29 U.S.C.A. § 1056(d)(3)(A)-(D). First, under ERISA a QDRO is a domestic relations order which recognizes the rights of an alternate payee to receive benefits under the plan. 29 U.S.C.A. § 1056(d)(3)(B). The Johnsons' attorneys do not fall within ERISA's definition of an "alternate payee," defined as "any spouse, former spouse, child, or other dependent of a participant who is recognized by a domestic relations order as having a right to receive all, or a portion of, the benefits payable under a plan with respect to such participant." 29 U.S.C.A. § 1056(d)(3)(K).
Second, those documents do not relate to provisions of child support, alimony or the Johnsons' marital property rights as required in the Retirement Equity Act of 1984, 29 U.S.C.A. § 1056(d)(3)(B)(ii)(I). Rather, paragraph fifteen of the divorce judgment and the orders relate to provisions of attorneys' fees arising out of the dissolution of the Johnsons' marriage, a matter not provided for under the antialienation exception.
Third, requiring the party's attorneys' fees to be paid from John Johnson's pension and annuity fund is a benefit not provided for under the Annuity Fund Plan and thus violates 29 U.S.C.A. § 1056(d)(3)(D)(i). The Annuity Fund Plan provides for monthly payments in the form of a lifetime annuity when John Johnson reaches age 55 or has withdrawn from active employment under the local's contracts for at least six months. The Annuity Fund Plan also provides an option for a lump-sum payment when the plan participant becomes eligible to retire if the participant is single or, if married, the spouse consents. The Annuity Fund Plan does not provide for a pre-retirement lump-sum withdrawal to pay attorneys' fees. The Annuity Fund Plan specifically forbids a plan participant from assigning, selling or transferring rights and states all payments from the Annuity Fund must be made to the plan participant, spouse or a beneficiary. Because the Johnsons' attorneys are not plan participants, spouses of the Johnsons, or beneficiaries under John Johnson's pension, *480 and because the $8,000 lump-sum payment for attorneys' fees is not a benefit provided for under the Annuity Fund, this assignment violates the provisions of the Annuity Fund Plan and 29 U.S.C.A. § 1056(d)(3)(D)(i). Thus paragraph fifteen of the divorce judgment, together with the judge's orders of February 24, 1997 and January 26, 1998, are ineffective.
"ERISA preempts all marital dissolution decrees that do not meet the statutory definition of a QDRO." Ross v. Ross, 308 N.J.Super. 132, 150, 705 A.2d 784 (App.Div.1998). The requirements in 29 U.S.C.A. § 1056(d)(3)(C) "for the creation of a QDRO must be strictly complied with before a domestic relations order may be considered `qualified.'" Id. at 153, 705 A.2d 784 (citing Hawkins v. Commissioner of Internal Revenue, 86 F.3d 982, 993 (10th Cir.1996)).
Although there are no relevant New Jersey cases, a few federal courts addressing similar issues support our conclusion. In Dickerson v. Dickerson, 803 F.Supp. 127, 129 (E.D.Tenn.1992), a divorce decree stated the former wife was awarded a lump-sum payment of $8,000 to be immediately paid from her former husband's pension benefits "as quickly as administratively possible following the entry of the Final Decree of Divorce," rather than waiting until her former husband's pension benefits reached payment status. The divorce decree included language purporting to issue a QDRO in compliance with 29 U.S.C.A. § 1056(d). Id. at 128. The former husband's pension plan did not comply with the command in the divorce decree because of the violation of ERISA and the IRC. The former husband's pension plan provided that monthly retirement benefits would begin when the former husband reached age 55 or became disabled. His pension plan also had an antialienation clause. The federal district court determined the divorce decree did not meet ERISA's requirements for a QDRO. Although the former wife met the statutory definition of an "alternate payee," the court concluded the divorce decree was not a QDRO because it sought "to provide a benefit not otherwise permitted under the pension plan and to disburse pension funds prior to" the commencement of the participant's retirement benefits. Id. at 134.
In Stott v. Bunge Corporation, 800 F.Supp. 567 (E.D.Tenn.1992), the federal district court determined the QDRO did not meet ERISA's requirements. The QDRO in that case required 50% of the former husband's pension benefits paid to the former wife in a lump-sum payment "as soon as administratively possible." The court determined the QDRO violated 29 U.S.C.A. § 1056(d)(3)(E)(ii) because it required payment to the former wife before the former husband reached "the earliest retirement age" and therefore required the pension plan to provide a benefit not otherwise provided for under the plan in violation of 29 U.S.C.A. § 1056(d)(3)(D)(i).
In AT & T Management Pension Plan v. Tucker, 902 F.Supp. 1168 (C.D.Cal.1995), the former husband's pension plan was joined as an interested party in the Tuckers' divorce action and reserved the right to object to any orders that violated ERISA. The family-court judge in that case ordered the pension plan to pay over $50,000 to the former wife's attorney as attorney's fees incurred during their communications with the pension plan and in pressing their application for attorney's fees over the pension plan's objections. Id. at 1170. The pension plan appealed the family-court judge's order. The family-court judge then granted the former wife's motion for an additional award of $10,000 in attorney's fees expected in handling the appeal from the trial-level court. The plan appealed this order as well. The plan then filed a complaint in the federal district court for injunctive and declaratory relief to restrain ERISA violations. Id. at 1171. The district judge, without providing a detailed analysis, determined the orders for attorneys' fees were not QDRO's and were preempted by ERISA's antialienation clause. Id. at 1176.
Similarly, here, the divorce judgment and the judge's orders require the lump-sum $8,000 payment for attorneys' fees made prior to John Johnson's pension achieving payment status. This clearly violates 29 U.S.C.A. § 1056(d)(3)(D)(i) because his pension benefits will not reach payment status until either he reaches age 55, withdraws *481 from his employment with the local for at least six months, or stops working in covered employment for six consecutive months. Based on the arguments presented by the Annuity Fund in its brief, any situation which would convert the Annuity Fund into payment status has not occurred as of August 3, 1998, the date its brief was filed.
We reverse and remand to the Family Part and direct that the judge vacate paragraph fifteen of the divorce judgment and the orders of February 24, 1997 and January 26, 1998 ordering payment from the Annuity Fund. In view of the potential inequities from alteration of the terms of the original marital settlement contemplating payment of attorneys' fees from the Annuity Fund, either party may apply for supplemental relief in the Family Part within forty-five days of the date of this opinion.
Reversed and remanded.