**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2786-18T3

DOUGLAS J. KLEIN,

     Plaintiff-Respondent,

v.

REBECCA FEIT-KLEIN,

     Defendant-Appellant.

_____

Submitted December 9, 2019 – Decided May 15, 2020

Before Judges Rothstadt and Moynihan.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Essex County, Docket No. FM-07-0297-17.

Lentz & Gengaro, LLP, attorneys for appellant (Christopher P. Gengaro, of counsel and on the briefs).

Douglas J. Klein, respondent pro se.

PER CURIAM

     Defendant Rebecca Feit-Klein appeals from the Family Part's June 11,

2018 default final judgment of divorce (JOD) granted to plaintiff, Douglas J.

Klein, and its February 15, 2019 order denying defendant's <u>Rule</u> 4:50-1 motion to vacate the JOD. The JOD was entered after the Family Part suppressed defendant's pleadings and entered a default against her in 2017 based upon her failure to file a Case Information Statement (CIS), as required by <u>Rule</u> 5:5-2, and after being directed to do so on numerous occasions.

On appeal, defendant argues her motion was improperly denied under <u>Rule</u> 4:50-1(a) because she established excusable neglect, and under <u>Rule</u> 4:50-1(f), because the JOD was oppressive and inequitable. We affirm the denial of relief under <u>Rule</u> 4:50-1(a), but remand for a more complete statement of reasons from the motion judge about the denial of relief under <u>Rule</u> 4:50-1(f).

Plaintiff and defendant were married on August 29, 1993. The parties have two children: a son, who is emancipated, and a daughter who continues to be supported by her parents as a college student with physical and developmental issues. Plaintiff works as a public school teacher, and defendant as a program administrator at a county college.

The parties separated in 2015 when plaintiff left the marital residence. Plaintiff filed a complaint for divorce on July 18, 2016. Defendant filed a timely answer and counterclaim, which she amended in April 2017. During the litigation, the motion judge entered case management orders on October 4, 2016,

and March 28, 2017, that required, among other things, that the parties file and exchange CISs. The latter order contemplated the CISs would be served in time for a mediation scheduled for May 8, 2017. Defendant never complied with either order and for that reason the mediation could not go forward.

When defendant failed to comply, plaintiff moved to strike defendant's pleadings. Defendant did not file any opposition to the motion. On September 30, 2017, the motion judge granted plaintiff's motion and issued a written statement of reasons. Based on the judge's order, on October 25, 2017, a default was entered against defendant.

The matter was then scheduled for a proof hearing to be held on February 26, 2018. A month before, plaintiff served defendant with a "Notice of Plaintiff's Proposal for Final Judgment," as required by Rule 5:5-10. Prior to the hearing, defendant's attorneys moved to be relieved as counsel. When the parties appeared for the proof hearing, the judge converted the proceeding into a case management conference and rescheduled the final hearing for April 10, 2018. At that time, the judge gave defendant another opportunity to comply with his earlier orders and directed that defendant serve and file her CIS by March 23, 2018. According to the judge, at the hearing, he "reviewed and . . .

affirmed with [d]efendant that she understood that . . . a [CIS] had to be . . . provided by her." Defendant still did not file a CIS.

Prior to the final hearing, on April 6, 2018, the judge granted defendant's counsel's motion to be relieved that was based upon her failure to comply with her attorneys' attempts to secure her compliance with the court's orders. At that time, that motion was the only one pending. Inexplicably, the hearing scheduled for April 10 did not take place. On May 15, 2018, plaintiff sent defendant a copy of a letter that plaintiff received from the Family Division Manager stating "[t]he court has scheduled your motion for 7/20/18." The document did not state to what motion it was referring, other than it was "plaintiff's motion." At that time, there were no motions pending filed by either party.

Without any notice to defendant, on June 11, 2018, plaintiff appeared and testified at a final hearing. At its conclusion, the judge entered the JOD, substantially in the form submitted with plaintiff's Rule 5:5-10 notice.

According to plaintiff's testimony at the hearing, the parties' primary marital asset was their home, as they had no financial or investment accounts. Plaintiff stated he had a pension with the public school system and another small pension through a previous employer. According to plaintiff, defendant had an employer sponsored retirement plan.

Plaintiff also testified that defendant had access to an inheritance from her father, but the estate's assets had not yet been distributed. Also, there was an educational fund established by defendant's father for the children, consisting of "hundreds of thousands of dollars," which he estimated to be "$160,000 in [their son's] account and . . . $130,000 in [their daughter's] account." Plaintiff stated he wanted to be reimbursed from those funds for the money he advanced for the parties' son's education.

Plaintiff also testified that defendant earned approximately $2500, which "wasn't that much money" and they lived a modest lifestyle, relying on debt to pay for their children's private school education and other expenses. In addition, plaintiff stated the parties accumulated various debts throughout their marriage.

According to plaintiff, he wanted to prepare the marital residence for sale, which would allow him to pay off the mortgages that he could no longer afford. Plaintiff's plan was to sell the marital residence, satisfy the marital debt, take some of those proceeds for himself as reimbursements for the payments he alone made toward the house, and then equally share the remaining proceeds with defendant.

At the conclusion of the hearing, the judge made credibility findings and placed his decision on the record. The judge found plaintiff credible given the

A-2786-18T3

manner in which he answered questions, his body language, his demeanor, and his even tone of voice. The judge noted how defendant was in default and that her pleadings had been stricken for her failure to file a CIS.

The judge also made numerous findings, under the fifteen factors set out in N.J.S.A. 2A:34-23.1, regarding plaintiff's burden to establish that his plan to equitably distribute the marital assets should be ordered.[1] Addressing the sixth factor, the economic circumstances of each party at the time of the division of the property, the judge noted how defendant had "flat out refused to file" a CIS with her basic financial information, which would have allowed him to make a determination as to her economic circumstances. After weighing the factors, the judge found that plaintiff's plan of equitable distribution should be entered.

As part of his decision, the judge denied alimony to either party because defendant's pleadings were stricken, and plaintiff was not seeking alimony. Addressing the needs of the children, the judge ordered defendant to maintain her employer-provided health coverage for the children, with plaintiff providing supplemental coverage, and that each party would be responsible for fifty percent of the unreimbursed medical expenses for the children. The judge also

---

[1] There's no reference to the fourth factor, the standard of living during the marriage, in the judge's decision.

A-2786-18T3

required each party to maintain their life insurance as long as a child remained unemancipated.

Addressing the children's college expenses, the judge considered the twelve factors set forth in Newburgh v. Arrigo, 88 N.J. 529, 545 (1982), and concluded that the parties should pay for their children's college expenses to the extent not covered by financial assistance. However, because defendant did not "provide her financial information" and there were funds earmarked for the children's education in an account established by their maternal grandfather, the judge determined that defendant should be solely responsible for the costs. The judge stated it "seems more a matter of going through the process of tapping the moneys to use for the stated purpose of the children's education." To the extent plaintiff had already made payments toward their education, which plaintiff testified totaled $93,684.44, the judge ordered defendant to reimburse plaintiff out of her equity in the marital residence.

Addressing the marital home, the judge ordered defendant to vacate within thirty-five days because defendant failed to participate in the process by submitting a CIS. The judge explained that "given the defendant's history of not participating and complying with the requirements to submit [CISs] . . . the [c]ourt finds that that is appropriate. There is a risk that the defendant [will]

7

seek to impede the plaintiff's ability to put into effect the equitable distribution plan that's approved by the [c]ourt." He granted plaintiff exclusive possession and required him to sell the house with the parties equally sharing in the equity, less any credits owed to plaintiff. In addition to the credit for education costs, the judge found plaintiff was owed $36,719.68 as a credit against defendant's share of the equity as a result of plaintiff continuing to make payments toward a home equity line of credit after the parties had separated.

The judge also addressed the distribution of the parties' retirement accounts, debts, automobiles and personal property based solely on plaintiff's testimony and submissions. In addition, the judge awarded plaintiff $14,711.12 in counsel fees and costs.

The following month, defendant sought the entry of an order to show cause seeking an immediate stay of the JOD relating to her vacating the marital residence, and an order vacating the JOD in its entirety.[2] In her supporting certification, defendant explained the reasons for her default and attached her completed CIS, with numerous supporting documents.

---

[2] Defendant's prior counsel resumed his representation of plaintiff and filed the application on her behalf.

In her certification, defendant maintained that there were many reasons for her default, most if not all of them having occurred or existed before plaintiff filed his complaint in this action. Defendant specifically cited to her being diagnosed with Attention Deficit Hyperactivity Disorder (ADHD), her treatment by a psychiatrist and therapist to alleviate her anxiety, her father's death, plaintiff moving out of their marital home while she was caring for her dying father, her being appointed executor of her father's estate during the time the divorce was proceeding, and her need to care for the parties' daughter, who required special education. She also explained that she was told her job at the county college was in jeopardy due to funding. Defendant also stated she failed to appear at the June 11, 2018 final hearing, because she believed the matter was being heard on July 20, 2018, according to the letter she received from plaintiff's counsel about the scheduling of plaintiff's motion.

Moreover, defendant explained that the JOD would cause her irreparable harm. Defendant argued that having her vacate the martial residence would be unjust as she had nowhere else to live. Further, defendant was concerned about the JOD's requirement that she remove all her personal effects from the marital residence and the JOD's provision requiring her to maintain health insurance for the children, alone. Defendant contended that she should be reimbursed for

medical expenses she paid on behalf of her children. Defendant also challenged the JOD's provision requiring her to pay for the children's education expenses and to reimburse plaintiff for any payments he made toward those expenses.

Additionally, defendant argued that she should receive alimony since her income was intended only to supplement plaintiff's during the marriage. Defendant also contended that allowing plaintiff to handle the disposition of the marital residence was inequitable. Further, she argued that the parties had marital debt that was only in defendant's name that needed to be addressed. Finally, defendant objected to the JOD's treatment of her pension, remaining bank accounts, marital residence expenses, and legal fees.

On July 11, 2018, the judge entered an order to show cause with temporary restraints, staying temporarily the portions of the JOD that required defendant to vacate the marital residence. Additionally, the order provided that defendant was to allow plaintiff reasonable access to the property in order to stage the property for sale.

Prior to the return date, defendant filed a reply certification, evidently in response to a submission that plaintiff made after being served with the order to

show cause.[3]  In her certification, defendant responded to certain facts asserted by plaintiff.  She then summarized the relief she was seeking as denying possession of the house to plaintiff; appointing a realtor being to facilitate its sale; that any recommended repairs to the home be made after estimates and court approval were obtained; and that plaintiff be responsible for one-half of their daughter's current college bill.

After considering the parties submissions and August 1, 2018 oral arguments,[4] on August 28, 2018, the judge granted defendant sole possession of the marital residence, required her to pay her daughter's college expenses and the first mortgage payment without prejudice, plaintiff to pay the home equity line, converted the order to show cause as to why the JOD should not be vacated into a motion, established a briefing schedule relative to the application, and scheduled oral argument for October 19, 2018.  Plaintiff then filed a notice of cross-motion to enforce the JOD, seeking an order denying defendant's motion to vacate, and awarding attorneys' fees.

---

[3]  We have not been provided with a copy of plaintiff's certification, if any.

[4]  We have not been supplied with a copy of the transcript of those proceedings.

A-2786-18T3

On February 15, 2019, the motion judge placed his decision on the record before granting in part and denying in part defendant's motion to vacate the JOD.[5]  In determining whether to vacate that judgment under Rule 4:50-1, the judge found that there was no excusable neglect.  Specifically, the judge stated that defendant's actions in failing to file her CIS were more than neglectful, they "were more in the nature of non-compliance with [c]ourt orders."

Despite denying defendant's motion to vacate, the judge addressed the issue of college expenses as raised by defendant in her reply certification, and modified the JOD under Rule 4:50-1(f), after finding his earlier ruling may have been "unjust, oppressive or inequitable."  The judge noted that "defendant's counsel . . . did make an argument that . . . those circumstances do exist . . . with respect to that one specific provision of the judgment."  He also observed that the earlier ruling "was a matter more having to do with the failure to provide the discovery items rather than an analytical analysis of the Newburgh factors."  The judge stated that "the question of the allocation of the expenses as between the parties would [not] automatically flow from [defendant's] failure to produce those [financial] documents."  The judge ordered that the JOD be amended to

_____

[5] According to the motion judge, oral argument did not occur on October 18, 2018, as scheduled, but was considered on November 9, 2018.  We have not been provided with a copy of the transcript from that proceeding.

provide that the parties would be responsible for their children's education as their income and financial resources may allow, after application of other available funds, including first financial aid, and loans, and then those available in the grandfather's educational fund.

On February 15, 2019, the judge entered an order memorializing his decision to deny the motion to vacate and to amend the JOD to provide that the parties would be responsible for college tuition in proportion to their respective incomes. The order also reset the dates for the repair and sale of the marital residence and denied plaintiff's application for an award of attorneys' fees. This appeal followed.

At the outset, we observe that "a judgment by default is not favored in divorce suits." Curry v. Curry, 108 N.J. Super. 527, 530 (App. Div. 1970). Nevertheless, we review a decision on a motion to vacate a default judgment under Rule 4:50-1 for abuse of discretion. U.S. Bank Nat'l Ass'n v. Guillaume, 209 N.J. 449, 467 (2012). "The trial court's determination under the rule warrants substantial deference, and should not be reversed unless it results in a clear abuse of discretion." Ibid. To warrant reversal, the movant must demonstrate that the motion judge's "decision [was] 'made without a rational explanation, inexplicably departed from established policies, or rested on an

impermissible basis.'"  Ibid. (quoting Iliadis v. Wal-Mart Stores, Inc., 191 N.J. 88, 123 (2007) (Rivera-Soto, J., dissenting)).

In determining whether a party should be relieved from a judgment, courts must balance "the strong interests in finality of judgments and judicial efficiency with the equitable notion that courts should have authority to avoid an unjust result in any given case."  Ibid. (quoting Mancini v. EDS, 132 N.J. 330, 334 (1993)).  When a trial court considers a motion to vacate a default judgment, the motion must be viewed "with great liberality," and "every reasonable ground for indulgence" is tolerated "to the end that a just result is reached."  Mancini, 132 N.J. at 334 (quoting Marder v. Realty Constr. Co., 84 N.J. Super. 313, 319 (App. Div. ), aff'd, 43 N.J. 508 (1964)).

Where a procedural violation is involved, additional considerations are implicated, namely, "[t]he defendant's right to have the plaintiff comply with procedural rules[, which] conflicts with the plaintiff's right to an adjudication of the controversy on the merits."  Abtrax Pharms., Inc. v. Elkins-Sinn, Inc., 139 N.J. 499, 513 (1995) (quoting Zaccardi v. Becker, 88 N.J. 245, 252 (1982)).  In all cases, however, "justice is the polestar and our procedures must ever be moulded and applied with that in mind."  Jansson v. Fairleigh Dickinson Univ.,

198 N.J. Super. 190, 195 (App. Div. 1985) (quoting N.J. Highway Auth. v. Renner, 18 N.J. 485, 495 (1955)).

Rule 4:50-1 permits a court "to relieve a party . . . from a final judgment" under certain circumstances. Implicated here are those circumstances described in subsections (a) and (f).

Under subsection (a), relief may be afforded upon a showing of "mistake, inadvertence, surprise, or excusable neglect." Excusable neglect constitutes default that was "attributable to an honest mistake that is compatible with due diligence or reasonable prudence." Guillaume, 209 N.J. at 468 (quoting Mancini, 132 N.J. at 335).

Under Rule 4:50-1(f), relief may be granted for "any other reason justifying relief from the operation of the judgment." Relief under subsection (f) is available only when "truly exceptional circumstances are present." Hous. Auth. of Morristown v. Little, 135 N.J. 274, 286 (1994) (quoting Baumann v. Marinaro, 95 N.J. 380, 395 (1984)). "The movant must demonstrate the circumstances are exceptional and enforcement of the judgment or order would be unjust, oppressive or inequitable." Johnson v. Johnson, 320 N.J. Super. 371, 378 (App. Div. 1999); see also Badalamenti v. Simpkiss, 422 N.J. Super. 86, 103 (App. Div. 2011).

Considering subsection (f) contemplates exceptional circumstances, "each case must be resolved on its own particular facts." Baumann, 95 N.J. at 395. "Among the factors to be taken into account . . . are the 'extent of the delay in making the application for relief, the underlying reason or cause, fault or blamelessness of the litigant, and any prejudice that would accrue to the other party.'" In re Guardianship of J.N.H., 172 N.J. 440, 474 (2002) (quoting C.R. v. J.G., 306 N.J. Super. 214, 241 (1997)).

With these guiding principles in mind, we turn to defendant's contention that her motion under subsection (a) was improperly denied because she established excusable neglect since she suffered from the "overwhelming life circumstances exacerbated by her medical condition" and "confusion sowed" by a notice sent to her in May 2018 by plaintiff's counsel, that allegedly scheduled a hearing for a motion on July 20, 2018. We disagree.

First, to the extent that defendant focuses on her failure to appear at the final hearing, that focus is misplaced. The issue throughout this matter was defendant's failure to serve and file a CIS as required by the court rules and the judge's repeated orders. It was not her failure to appear at the proof hearing.[6]

---

[6] Had she appeared at the proof hearing without filing a CIS, she would not have been able to adduce any affirmative evidence in support of her own

Second, and focusing on defendant's reasons for not filing a CIS, we conclude as did the motion judge, that her reasons for her noncompliance do not rise to the "excusable neglect" contemplated by subsection (a). While it is true that a finding of excusable neglect is warranted when a litigant is unable to understand or appreciate the impact of their non-action, see Bergen-Eastern Corp. v. Koss, 178 N.J. Super. 42, 45 (App. Div. 1981) (upholding a finding of excusable neglect where an elderly woman who had been hospitalized could not mentally appreciate the service of a complaint against her due to "continuing, serious psychiatric problems"), a party's repeated failure to respond to the court will not constitute excusable neglect. See Fineberg v. Fineberg, 309 N.J. Super. 205, 217-18 (App. Div. 1998) ("[T]he right to present one's case carries with it the commensurate obligation to cooperate with the court, counsel and other litigants.").

Here, there was no evidence that defendant made any attempt to comply with her obligations or notify the court of any serious impediment. Instead, defendant repeatedly ignored the judge's orders and did so again when she was

---

contentions, and at best would have only had an opportunity to cross examine. See Innes v. Carrascosa, 391 N.J. Super. 453, 496 (App. Div. 2007). Nowhere in her supporting certification does she establish what such cross examination would have yielded.

A-2786-18T3

given another chance, after the judge confirmed her understanding of the need to file the CIS. Nothing in her explanation indicated that she had anything like "a history of continuing, serious psychiatric problems with several hospitalizations for mental illness" that prevented her from "understand[ing the] import" of complying with the judge's orders and filing her CIS. Koss, 178 N.J. Super. at 45-46.

It is beyond cavil that a litigant must meet his or her obligation under the court's rules and its orders. In a family action, the importance of filing a CIS also cannot be disputed. Rule 5:5-2 requires that a party file a CIS early in the litigation, within 20 days of the filing of an answer, because it is essential to the prompt resolution of the dispute, either by settlement or trial. See Pressler and Verniero, Current N.J. Court Rules, cmt. 1 on R. 5:5-2 (2020). The filing of a CIS has been described as "the fundamental and most important financial discovery device." Alan M. Grosman & Cary B. Chiefetz, New Jersey Family Law § 7-2 (2d ed. 2016). A failure to file a CIS may lead to the dismissal of a party's pleadings. R. 5:5-2(b).

Where, as here, a litigant repeatedly fails to file and serve a CIS through the final hearing, dismissal is appropriate absent proof establishing a complete inability to understand the significance of the failure to comply. Defendant

failed to establish that level of incapacity in her attempt to prove excusable neglect, especially in light of the numerous opportunities to comply she was given by the motion judge.

We turn our attention next to defendant's arguments under Rule 4:50-1(f) and reach a different conclusion. Addressing individual provisions of the JOD, defendant contends many of them are "inequitable," which warrants vacating the judgment. Specifically, she contends that the JOD was "extraordinarily inequitable, unfair and unjust and should be vacated." She argues that the judge's refusal to grant alimony, his allocation of costs associated with the children's health insurance coverage and college expenses, the judge's equitable distribution of the home, retirement accounts, bank accounts and debts, and its award of legal fees should be vacated under subsection (f).

We conclude that because the motion judge's oral decision never addressed any issue other than education expenses, we cannot address defendant's contentions on appeal. For example, we note that in originally determining that alimony was not warranted in the JOD, the judge cited to the same reason for originally requiring defendant to pay all of the educational expenses – defendant's failure to file her CIS. Although upon reconsideration, the judge found it was "unjust, oppressive or inequitable" just to rely on her

19

default for education expense purposes, he never conducted the same analysis when considering alimony or any of the other issues addressed in the JOD. Without a more complete explanation of the judge's decision as required by Rule 1:7-4, we cannot perform our appellate function. For that reason, we are constrained to remand this issue to the motion judge for a more expansive statement of reasons supporting his decision to deny defendant further relief under Rule 4:50-1(f).

We are also compelled to remand for clarification of the motion judge's reasons for still requiring defendant to reimburse plaintiff $93,684.44 for college expenses after reopening the JOD to amend it to provide for a reallocation of educational expense. The judge's order amending the college expense does not mention the original credit and why it was not subject to the reallocation or, for that matter, why it had to have been paid from defendant's equity in the home, rather than the education funds, if warranted, especially since the judge and plaintiff stated that education expenses were to be paid from financial aid, then the funds, before either party would be liable for education expenses.

By remanding this matter for a more complete explanation of motion judge's reasons, we do not mean to limit the judge's ability to reconsider his

earlier decisions if appropriate. We do not infer, one way or the other, whether a reconsideration is required.

Affirmed in part; remanded in part for further proceedings consistent with our opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2786-18T3