**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2454-20

DOUGLAS J. KLEIN,

    Plaintiff-Respondent,

v.

REBECCA FEIT-KLEIN,

    Defendant-Appellant.

_____

> Submitted May 9, 2022 – Decided July 5, 2022
>
> Before Judges Rothstadt and Natali.
>
> On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Essex County, Docket No. FM-07-0297-17.
>
> Lentz & Gengaro, LLP, attorneys for appellant (Christopher P. Gengaro, of counsel and on the brief).
>
> Respondent has not filed a brief.

PER CURIAM

    In an earlier unpublished opinion, we considered defendant Rebecca Feit-

Klein's appeal from a Family Part judge's denial of her Rule 4:50-1 motion to

vacate the default judgment of divorce (JOD) that was entered against her in favor of plaintiff Douglas J. Klein. See Klein v. Feit-Klein (Klein I), No. A-2786-18 (App. Div. May 15, 2020) (slip op. at 1-2). After reviewing the matter, "[w]e affirm[ed] the denial of relief under Rule 4:50-1(a), but remand[ed] for a more complete statement of reasons from the motion judge about the denial of relief under Rule 4:50-1(f)." Id., slip op. at 2.

In response to our remand, the motion judge entered an order on March 25, 2021 reasserting his denial of any further relief to defendant for the reasons he placed on the record on the same date. On appeal from that order, defendant now contends the judge abused his discretion by not granting her relief and doing so without holding a plenary hearing.

We have considered defendant's contentions in light of the record and the applicable principles of law. We affirm the motion judge's order, except as to the issue of the judge's original award of a credit to plaintiff for payment of the parties' now emancipated children's college expenses. As to that issue, we are again constrained to remand the matter to the motion judge for further explanation because, despite our earlier remand, the judge did not address the issue.

A-2454-20

I.

The facts relating to the parties and the earlier procedural history of this matter that led to defendant being defaulted for her failure to file a case information statement (CIS), the subsequent entry of the default JOD, and the judge's orders addressing defendant's motions for relief, are well known to the parties and set forth at length in our earlier opinion. Klein I, slip op. at 2-13. They need not be repeated here for our purposes. Instead, we review our directions to the motion judge and his response that culminated in the order now under appeal.

As we explained in our earlier opinion, it was unclear to us why, in response to defendant's post judgment motion, the judge modified defendant's obligations under the JOD to pay all of the parties' children's college expenses, but he did not modify any of the other financial issues which, like the cost of college, was based on defendant's failure to file a CIS. We also directed that the judge explain why he still required defendant to reimburse plaintiff $93,684.44 towards the college expenses that plaintiff already paid, without allocating that amount in accordance with his order granting defendant relief from judgment by directing future college expenses be paid in accordance with the parties' income ratio. We specifically explained the following:

We conclude that because the motion judge's oral decision never addressed any issue other than education expenses, we cannot address defendant's contentions on appeal. For example, we note that in originally determining that alimony was not warranted in the JOD, the judge cited to the same reason for originally requiring defendant to pay all of the educational expenses – defendant's failure to file her CIS. Although upon reconsideration, the judge found it was "unjust, oppressive or inequitable" just to rely on her default for education expense purposes, he never conducted the same analysis when considering alimony or any of the other issues addressed in the JOD. Without a more complete explanation of the judge's decision as required by Rule 1:7-4, we cannot perform our appellate function. For that reason, we are constrained to remand this issue to the motion judge for a more expansive statement of reasons supporting his decision to deny defendant further relief under Rule 4:50-1(f).

We are also compelled to remand for clarification of the motion judge's reasons for still requiring defendant to reimburse plaintiff $93,684.44 for college expenses after reopening the JOD to amend it to provide for a reallocation of educational expense. The judge's order amending the college expense does not mention the original credit and why it was not subject to the reallocation or, for that matter, why it had to have been paid from defendant's equity in the home, rather than the education funds, if warranted, especially since the judge and plaintiff stated that education expenses were to be paid from financial aid, then the funds, before either party would be liable for education expenses.

[Klein I, slip op. at 19-20 (emphasis added).]

In response to our remand, the motion judge, after considering the parties' submissions[1] and oral arguments, on March 25, 2021, placed his explanation on the record for denying defendant's Rule 4:50-1(f) motion on the issues of alimony, equitable distribution, attorney's fees, and health insurance coverage.

As to alimony, the judge "w[as] not . . . inclined to grant relief under [Rule] 4:50-1(f) [from] the provisions of the [JOD] that . . . denied alimony to either party" because the record and plaintiff's credible testimony demonstrated that the parties "lived a relatively modest lifestyle," as illustrated by their modest vehicles and that they did not vacation frequently. He found that both parties and their lifestyle demonstrated that they were "very dedicated" to their children's development and education. Although he found that "there was some income, . . . in looking at the more expansive reasons for . . . not finding that the alimony issue was unjust, oppressive, or inequitable, [the judge] did not see in

---

[1] We glean from the record that no additional evidence was submitted to the court after our remand. At the beginning of the motion judge's March 25, 2021 decision he states that he considered the parties' "written submissions with respect to their positions on the remand and on October 23[], 2020, the [c]ourt had heard oral argument on the issue of the remand." Defendant did not include those submissions or the transcript from the oral argument. We assume she did not include those items in her appendix because they contained no new evidence and only referred to the parties' legal arguments and were excluded from the appendix under Rule 2:6-1(a)(2).

A-2454-20

the record any basis to say that the consequences flowing from [defendant's] neglect in providing the [CIS] was somehow unjust, oppressive or inequitable."

Addressing equitable distribution, the motion judge reiterated his findings, based on plaintiff's credible testimony, that defendant's inheritance was not a marital asset, and that there were marital assets in the form of retirement accounts and their marital residence. In applying the Rule 4:50-1(f) standard, the judge explained that he did not see any "basis to exercise [his] discretion" to reconsider the JOD. He shared the following:

> [T]he [c]ourt, in looking at applying the [Rule] 4:50-1(f) standard, did not find . . . that there [was] something unjust, oppressive, or inequitable about parties who had, over the course of the marriage[,] . . . each contributed and each shared in the raising . . . of their children through school and high school and . . . into college and adulthood, where the nature of the assets or . . . any of the other detailed findings that . . . there was any[thing] unjust, oppressive, or . . . inequitable about an equitable distribution scheme that takes the assets and liabilities . . . and splits the equity 50/50.

Regarding the award of attorney's fees to plaintiff, the judge noted that he "was guided by . . . Rule 5:3-5" and "made findings based on the evidence . . . in the record before [him] with respect to . . . each of the factors under [the Rule]." The judge reiterated his analysis of the factors and corresponding findings that were placed on the record on June 11, 2018. He then considered

6

his findings "from the perspective of <u>Rule</u> 4:50-1(f)" and noted that he "did not find that there's anything unjust, oppressive, or inequitable about having granted the fee award" to plaintiff. The judge explained as follows:

> The . . . fee award was based . . . on hours spent, reasonable rates, and bringing the matter to fruition . . . and to some extent, . . . the greater weight the [c]ourt gave factor three may have a little more import with respect to . . . <u>Rule</u> [4:50-]1(f) analysis, because the [c]ourt did . . . make different findings with respect to the parties as to the good faith in which they had proceed[ed] during the matrimonial proceeding and found that . . . plaintiff here had essentially done that which was required and expected of him to do to move the case forward to a point where either it would go to consensual resolution . . . or a judicial determination.
>
> And . . . the [c]ourt made the opposite finding with respect to . . . defendant, that even though given the multiple opportunities and . . . it was made clear the effect of continued . . . non-participation, that . . . defendant continued in that course.
>
> . . . .
>
> [T]he [c]ourt did not see . . . that . . . defendant had shown that there's anything unjust, oppressive, or inequitable about the even manner in which the [c]ourt had gone about reaching its determination. . . .
>
> . . . .
>
> So the [c]ourt did not see a basis to grant relief under . . . <u>Rule</u> 4:50-1(f) on the . . . legal fees.

A-2454-20

As to health insurance, the motion judge noted that defendant did not demonstrate that directing her to maintain health insurance coverage for the unemancipated children through her employer with no contribution from plaintiff was unjust, oppressive, or inequitable. He explained that he found that the JOD provision fairly "strikes a balance between the two [parties and] their responsibilities to the children's health insurance" because (1) the parties split fifty/fifty for any unreimbursed medical costs, (2) the order directed plaintiff to provide the supplemental coverage for dental and vision, and (3) if defendant was later unable to provide health insurance coverage through her employer, then plaintiff was solely responsible for providing health insurance, whether or not he can obtain it through his employer and without contribution from defendant.

The judge did not address the credits awarded to plaintiff, particularly the previously ordered $93,684.44 reimbursement to plaintiff for college education expenses to be paid from defendant's equity in the home. Klein I, slip op. at 20.

On the same day, the judge issued an order consistent with his oral findings and noting that he "found no basis to further amend or reconsider any portion of the [JOD] entered June 11, 2018, as modified by order dated[] February 15, 2019." This appeal followed.

## II.

Initially, we must determine whether the motion judge complied with our remand instructions. On remand, "[i]t is beyond dispute that a trial judge has the responsibility to comply with pronouncements of an appellate court." Tomaino v. Burman, 364 N.J. Super. 224, 232 (App. Div. 2003) (citing Reinauer Realty Corp. v. Borough of Paramus, 34 N.J. 406, 415 (1961)). Adherence to instructions on remand "precisely as it is written" is the "peremptory duty of the trial court." Id. at 233 (quoting Jersey City Redevelopment Agency v. Mack Props. Co. # 3, 280 N.J. Super. 553, 562 (App. Div. 1995)). While trial judges have the "privilege[] to disagree," they are "bound to follow the rulings and orders of the Appellate Division; they are not free to disregard them." Ibid. (citing Kosmin v. N.J. State Parole Bd., 363 N.J. Super. 28, 40 (App. Div. 2003)).

We conclude that the judge complied with our remand instructions except, as already noted, as to the issue of the credit awarded to plaintiff. Given the thoroughness of his oral opinion on remand, it seems that the failure to explain this particular issue was an oversight. Nevertheless, we are constrained to remand again for the explanation we requested in our earlier opinion as the record is still unclear on how and under what standard the judge, as we

9

previously stated, "requir[ed] defendant to reimburse plaintiff $93,684.44 for college expenses after reopening the JOD to amend it to provide for a reallocation of education expense" "and why [that credit] was not subject to the reallocation or, for that matter, why it had to have been paid from defendant's equity in the home, rather than the education funds." Klein I, slip op. at 20.

III.

As to the remaining issues, now that we have the benefit of the judge's reasoning addressing the other economic issues, we can consider defendant's challenge to the order denying her further relief. We do so applying the same legal principles specifically set forth in our earlier opinion as related to our review of the judge's denial of relief under Rule 4:50-1(f) from the default JOD that was entered based on defendant's failure to file a CIS. Id., slip op. at 13-16. We only reiterate the burden was on defendant to "demonstrate the circumstances are exceptional and enforcement of the judgment or order would be unjust, oppressive or inequitable." Johnson v. Johnson, 320 N.J. Super. 371, 378 (App. Div. 1999). "[T]he correctness or error of the original judgment," however, "is ordinarily an irrelevant consideration." Pressler & Verniero, Current N.J. Court Rules, cmt. 5.6.1 on R. 4:50-1(f) (2022).

## A.

On appeal, defendant now argues that "[w]hen a judgment [is] entered by default, an application to vacate is 'viewed with great liberality, and every reasonable ground for indulgence is tolerated to the end that a just result is reached.'" In this regard, she contends that she "cured all defaults by filing her CIS [with] all required documents, and filed her application to vacate the [d]efault [JOD] within a mere thirty days," which "demonstrated that the terms of the [d]efault [JOD] were extraordinarily unjust and inequitable." Defendant asserts that the motion judge's failure to modify provisions of the JOD "was erroneous and an abuse of discretion" and "should be vacated" because, as she contends, she satisfied the criteria for vacating the JOD as to each economic issue. We summarize her contentions by subject matter as follows.

## Defendant's Pension and Retirement Account

Defendant contends that this provision in the JOD is "onerous and inequitable" because "[n]o consideration was given to the overall assets and financial situations of the parties, and whether requiring [defendant] to give up [fifty percent] of her [p]ension and 403(b) account represents a fair and just equitable distribution of the assets." In addition, she contends that "[t]here is also no way to determine whether [p]laintiff has properly accounted for all his

11

retirement assets, and properly determined the portion of [defendant's] retirement assets that are marital, as opposed to pre-marital and exempt."

Alimony

Defendant argues that she is entitled to alimony based on the disparity of the incomes between the parties, their long-term marriage, and other circumstances. She explains that she left her tenured position in October 1998, after fourteen years of employment, to care for their youngest child who "was born with critical health issues and needed extra care due to her disabilities." According to defendant, the parties "jointly agreed that [defendant] should leave her [employment] to take care of the children, while [p]laintiff continued to work and provide for the family." Thereafter, she returned to work but the "parties agreed that she should look for a job that provided the flexibility necessary for her to continue to provide support for the children, especially [their daughter]."

According to defendant, her current yearly salary is approximately $48,000 and it is "inadequate to sustain her ability to maintain a basic lifestyle" and because she is sixty-two years old, "it is unrealistic for her to reestablish a career." She also notes that "[p]laintiff has always been the breadwinner and since his abandonment of the [p]arties' joint household, the financial status quo

12

was never maintained." Thus, because of "these circumstances, and given the disparity of incomes between the [parties]," plaintiff contends that she is "clearly entitled to an award of alimony."

Health Insurance for the Children

Defendant asserts that plaintiff should be responsible for providing health coverage for the children because her "low salary [will be] greatly diminished if she is required to maintain a family plan." She notes that plaintiff, under his employment agreement, can provide health insurance for the children and contends that it would be "fair[]" for him to provide the coverage because she "cannot afford to carry this responsibility without any contributions from [p]laintiff."

Unreimbursed Health Expenses for Children

Defendant argues that although the judge directed each party to be responsible for fifty percent of the children's health-related expenses, "he did not consider the significant expenses that [she] already paid." Thus, she argues that plaintiff should be required to reimburse her for past medical expenses that plaintiff did not submit during the June 11, 2018 default hearing.

A-2454-20

## College and the Daughter's Private School Expenses

According to defendant, the parties agreed that because of their daughter's "special needs," she should attend private school. She contends that the default hearing did not address this issue or the fact that she paid the daughter's entire private education and related therapies without defendant's contribution.

As to the issue of the credit, about which we are again remanding, defendant notes that the judge required her to "reimburse for [one hundred percent] of the funds [that plaintiff] allegedly paid toward the college education for the [children]" in the amount "of $93,684.44 from her share of the net equity in the former marital residence." First, she contends that plaintiff did not pay approximately $22,000 for college costs. Second, she contends that since the parties share joint responsibility for their children, "[p]laintiff should be required to share in the expense of college with percentages of responsibility being equitable based on the parties' incomes and financial circumstances." Last, she contends that "[i]t is inequitable to saddle one parent, who earns just $48,000 per year, with this responsibility."

## Sale of Marital Residence and Related Costs

Defendant contends that the equal division of proceeds and the award of credits to plaintiff should be vacated. She asserts that the award is "lopsided"

and "only accounts for one party's contribution of the expenses of the marital home." She explains that she paid "for a large share of many of the expenses of the marital residence and should be granted the opportunity to provide a detailed accounting of her contributions for which she should be entitled to credit."

## Marital Debts

In directing that the marital debt be paid from the proceeds of the sale of the marital home under the JOD, defendant argues that the motion judge did not consider "the fact that [she] incurred debt in her name that is marital debt and should be a joint marital obligation of the parties."

## Equalization of Bank Accounts

In directing plaintiff to liquidate the joint bank accounts and equally dividing the proceeds under the JOD, defendant complains that she "has no way of knowing if the assets in [the joint bank] accounts accurately reflect an equitable division of all marital assets and all expenses." Instead, she explains that the assets in these bank accounts "cannot be distributed in a vacuum, but must be included in a comprehensive plan of equitable distribution that is fair to both parties."

In awarding legal fees to plaintiff, defendant contends that the motion judge did not give any consideration "to the complete picture including financial, residential, and other circumstances."

## B.

We are not persuaded by any of defendant's contentions. We conclude that despite her contentions before the motion judge and now on appeal, defendant failed to satisfy her burden. See Johnson, 320 N.J. Super. at 378 ("The movant must demonstrate the circumstances are exceptional and enforcement of the judgment or order would be unjust, oppressive or inequitable."); see also Badalamenti v. Simpkiss, 422 N.J. Super. 86, 103 (App. Div. 2011) (same).

Significantly, defendant failed to ever justify with any competent evidence a reason for her repeated failure to file a CIS as required by court rule and repeatedly by the motion judge prior to the default hearing. She never established exceptional circumstances that would support the motion judge granting her relief.

As to the delineated objections defendant raises to the judge's decision on the parties' economic issues, as already noted, we conclude he sufficiently explained his findings and reasons for denying relief under Rule 4:50-1(f). The

16

judge fairly and methodically went through all the applicable statutory and court rule factors to fairly determine all of the economic aspects of the parties' divorce, despite defendant's non-participation and failure to provide her CIS. The judge made his determination after considering the information before him and assessing plaintiff's credibility. We discern no abuse of the judge's discretion.

Defendant, instead of demonstrating an exceptional circumstance or unjust, oppressive or inequitable results, has only proffered what she believes she might have demonstrated at trial had she filed her CIS. That proffer did not satisfy her burden because even if any portion of the JOD was erroneous, absent proof that the results were unjust, oppressive or inequitable, we have no cause to disturb the judgment. See Pressler & Verniero, cmt. 5.6.1. on R. 4:50-1(f) ("[T]o obtain relief under this subsection, the movant must ordinarily show that the circumstances are exceptional and that enforcement of the order or judgment would be unjust, oppressive or inequitable." (emphasis added) (citing US Bank Nat'l Ass'n v. Guillaume, 209 N.J. 449, 484 (2012))).

In light of our determination, we need not address defendant's contention that a plenary hearing was warranted.

Affirmed in part and remanded in part for further proceedings consistent with our opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

17

A-2454-20